WATERS AND WATER RIGHTS For purposes of the Oklahoma Employment Security Act, a rural water district formed under 82 O.S. 1324.1 [82-1324.1], et seq. (1977), is an instrumentality of the State of Oklahoma. The Attorney General has considered your request for an opinion wherein you ask, in effect, the following question: "For purposes of the Oklahoma Employment Security Act, is a rural water district an instrumentality or political subdivision of the State? Under 40 O.S. 229 [40-229](7) and 40 O.S. 229 [40-229](12) (1977)the State and its instrumentalities and political subdivisions are included in the definition of "employer" for purposes of coverage under the Oklahoma Employment Security Act. With regard to the State, its instrumentalities and political subdivisions, 40 O.S. 236 [40-236] (1977), as amended by Section 1, Chapter 82, O.S.L. 1978, provides for payment of one (1%) percent of wages in lieu of the regular contributions required of employers under the Act. In 4 Okl.Op.A.G. 93 (Opinion No. 71-164), it was held that the Murray County Water District No. 3 and the Buckhorn Water District are not political subdivisions of the State of Oklahoma; however, they are "districts" and therefore, "local government" as that term is used in the National Disaster Relief Act of 1950. It appears in Oklahoma that there is a distinction between a political subdivision or subdivision of the State and an agency, authority or instrumentality of state government. The case of Sheldon v. Grand River Dam Authority, 182 Okl. 24, 76 P.2d 355
(1938), discusses the distinction between a political subdivision or subdivision of the State and an agency or authority of the State. At page 28 of the opinion in the Sheldon case, the Court states as follows: ". . . The authority was not organized for political or government purposes, and does not possess political or governmental powers other than necessary to carry out the specific purposes for which it was created. The board of directors is appointed by state officers, and the people of the district have no voice in their selection . . . . The waters and potential electric energy of the Grand River are the natural resources of the State and stripped of all of its detail, the act creates an agency through which the State seeks to exploit, preserve and utilize in a certain and specific manner that portion of its natural resources. The purpose of the act is analogous to that of an irrigation district, and in Wood v. Imperial Irr. Dist. (1932), Cal.)17 P.2d 128, it is held that an irrigation district is not, strictly speaking, 'municipal corporation', nor is it 'political subdivision of the state or county' or 'political subsidiary' . . ." From a review of 82 O.S. 1324.1 [82-1324.1] through 82 O.S. 1326 [82-1326] (1977), relating to rural water, sewer, gas and solid waste management districts, it appears that while such districts are agencies or authorities of the State, they are not strictly speaking, political sub divisions or subdivisions of the State. In this respect, 82 O.S. 1324.3 [82-1324.3] (1977), relating to the purpose of rural water districts, provides in its pertinent part as follows: "Public non-profit rural water districts, public non-profit rural sewer districts, public non-profit natural gas distribution districts and public non-profit rural solid waste management districts may be organized under this act for the purpose of developing and providing an adequate rural water supply, gas distribution facilities, sewer disposal facilities and solid wastes management system to serve and meet the needs of rural residents within the territory of the district . . . ." Thus, rural water, sewer and natural gas and solid waste management districts do not possess general political or governmental authority in the same sense that counties and municipalities possess such authority, but rather only have such authority as is necessary to carry out the specific purposes for which such districts are authorized to be formed. Additionally, 82 O.S. 1324.15 [82-1324.15] (1977) provides as follows in its pertinent part: ". . . the district shall be a body politic and corporate and an agency and legally constituted authority of the State of Oklahoma for the public purposes set forth in this act." It is, therefore, the opinion of the Attorney General that your question be answered as follows: For purposes of the Oklahoma Employment Security Act, a rural water district formed under 82 O.S. 1324.1 [82-1324.1], et seq. (1977), is an instrumentality of the State of Oklahoma. (GERALD E. WEIS) (ksg) ** SEE: OPINION NO. 78-206 (1978) **